The State of Ohio, Appellee, *v.* Evans, Appellant.

(No. 71-72—Decided August 3, 1971.)

Mr. *George C. Smith,* prosecuting attorney, and Mr. *David H. Bodiker,* for appellee.

Mr. *Roy F. Martin,* director, Legal Aid & Defender Society, for appellant.

Troop, P. J. James L. Evans was convicted February 3, 1971, by a jury on two counts of forgery and two counts of uttering a forged instrument. The judgment imposing sentence from which this appeal is taken on questions of law was entered the same day.

Two assignments of error are advanced in support of the appeal as follows: error was committed by the court in its charge regarding the elements of the offenses, proof of which is required, and the verdict and judgment were against the manifest weight of the evidence. The latter, being the more comprehensive, is noted first.

The basic fact in this case is that James L Evans drew and issued two checks upon City National Bank & Trust Co., on September 10 and 21, 1970, and had no account in the bank. So far as the record shows, by coincidence one James L. Evans did have an account at that bank.

It is clear that issuing a check on a bank in which a drawer had no account, signed with the drawer's own name, was not, at common law, a forgery, nor was it such in Ohio for many years.

The classic Ohio decision is found in *In re Clemons* v.

*Altis* (1958), 168 Ohio St. 83. The cause had been certified to the Supreme Court by this Court of Appeals which found its decision affirming the issuance of a writ of *habeas corpus* by the Common Pleas Court in conflict with the decision of another district. The Supreme Court said that the single issue was whether signing your own name to a check drawn on a bank in which you have no account is forgery under R. C. 2913.01. The syllabus in the case is as follows:

"The making of an instrument purporting to be a check, with intent to defraud, signed by the maker with his own name but drawn on a bank in which such maker has no 'checking account' constitutes the false making of a check and is 'forgery' as defined by Section 2913.01, Revised Code."

R. C. 2913.01 reads in pertinent part, as follows:

"No person, with intent to defraud, shall falsely make, alter, [or] forge * * * a * * * check, [or] bill of exchange * * * or, with like intent, utter or publish as true and genuine such false, altered, [or] forged * * * matter, knowing it to be false, altered, [or] forged * * *."

Counsel for the defendant, appellant herein, takes the position that the majority opinion in *Clemons, supra,* "rests upon shaky ground." He relies upon the dissenting opinion in *Clemons* by Justice Taft. If the decision in *Clemons* is "bad law," it must be noted that the Supreme Court has twice reaffirmed the *Clemons* rule. It was reiterated in *Dunham* v. *Maxwell* (1963), 174 Ohio St. 184, another *habeas corpus* action in which the petitioner claimed there was no forgery because he signed his own name but had no account. The court said, at page 185:

"Petitioner's contention is without foundation. This court in *In re Clemons,* 168 Ohio St., 83, held that such act constitutes the crime of forgery under Section 2913.01, Revised Code. * * *"

The court then quoted the syllabus from *Clemons.* Six justices concurred in this opinion.

A more recent decision, having the same pattern as *Dunham, supra,* is found in *Cunningham* v. *Haskins* (1965), 3 Ohio St. 2d 86. The court cited *Dunham* and *Clemons* and said, at page 86: ·

"The fact that petitioner signed his own name to the checks would not prevent the signing of those checks from being a violation of the Ohio statute defining forgery * * *"

In this case there was a single dissent, but Chief Justice Taft was with the majority.

If the position of the court in *Clemons* is "shaky," it has twice been reaffirmed and must be conceded to be the law of Ohio.

Counsel for appellant notes, and relies upon, *State* v. *Akins* (1959), 109 Ohio App. 302, for some help in support of his first assignment of error. The decision in *Akins* also followed *Clemons*. Counsel especially distinguishes the fact pattern in *Akins*, although oddly enough the parties in *Akins* stipulated it to be on all fours with *Clemons* (page 303), from that in this case, as it bears upon the matter of intent. It is important to note that Akins testified on his own behalf. Evans did not. Akins said he did not intend to defraud, expecting to cover his checks with money derived from the settlement of a claim. It is true that 11 days elapsed between the cashing of the first check by Evans, and his cashing of the second which might have had some bearing upon his intent. Counsel notes that Evans made no effort to leave the premises whereas Akins had a train ticket to New York which he expected to use the next day.

Speculation as to the intent of Evans produces nothing of help for him since the defense offered nothing by way of evidence to overcome the intent implied from his acts. Offsetting the conjecture of a lack of intent, an equally valid surmise is that he got along so well on the first try that in the second attempt success seemed assured. In any event, here, as in other crimes, intent may be implied from an act knowingly designed to deceive another.

Defendant's first assignment of error asserts that the trial court erred in instructing the jury that the state was required to establish that the checks signed James L. Evans were signed without the consent of the James L. Evans who in fact had a checking account with the bank concerned.

Defendant was charged with forgery. The applicable statute was operative, according to the decision in *Clemons*,

whether the accused signed his own name or that of another person. By mere coincidence, so far as the evidence is concerned, the defendant signed his name which happened also to be that of another Evans who did have an account. If, in fact, the defendant knew of the bona fide customer, his act would still have been forgery. If the defendant had asserted authorization as a defense, then, and then only, would the testimony of the customer Evans have served some useful purpose. The state of the record shows such testimony and the court's instruction regarding it to be surplusage. It was error to admit the evidence and to give the instruction.

It cannot be said, however, that the adding of another complicating element which the state was required to prove was prejudicial to the defendant. An additional element to be proved could only work to the advantage of the accused and against the state by increasing its burden.

The apparent motivation of counsel in developing this appeal deserves comment. Forgery is not a heinous crime at its worst. It is a point of concern that one who signs his own name to a check on a bank where he has no account is a felon, whereas, one who has an account with only a one dollar balance, and who makes a check for sixty dollars or less, as was the case here, commits only a misdemeanor. It may be extreme to charge that such a distinction is "patently ridiculous," but assuming a criticism in a milder vein, it must be said that the line drawn between the two situations is extremely fine, and however unjust an observer concludes it to be, it is beyond any question the business of the Legislature to make distinctions, fine or otherwise.

Defendant's assignments of error are not well taken and, for the reasons advanced, the judgment of the trial court is affirmed.

*Judgment affirmed.*

STRAUSBAUGH and REILLY, JJ., concur.